Juan I. BARRETO–BARRETO, Juan F. Barreto–Ginorio, Glorimar Barreto–Ginorio, Juan M. Barreto–Ginorio, Ramon L. Barreto–Ginorio, Nelson Ramos–Irizarry, Carmelo Rivera–Rivera, Teodoro F. Alfonso–Toledo, Ivan Rosa–Toledo, Petitioners, Appellants,

v.

UNITED STATES, Respondent, Appellee.

Nos. 07–2149, 07–2150, 07–2151, 07–2152, 07–2153, 07–2154, 07–2155, 07–2156, 07–2157.

United States Court of Appeals, First Circuit.

Heard Oct. 27, 2008.

Decided Dec. 24, 2008.

Lorenzo J. Palomares–Starbuck was on brief for petitioners.

Julia M. Meconiates, Assistant United States Attorney, with whom Rosa E. Rodríguez–Vélez, United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, were on brief for respondent.

· Before TORRUELLA and HOWARD, Circuit Judges, and DiCLERICO,* Senior District Judge.

DiCLERICO, District Judge.

The petitioners, Juan I. Barreto–Barreto, Juan F. Barreto–Ginorio, Glorimar Barreto–Ginorio, Juan M. Barreto–Ginorio, Ramon L. Barreto–Ginorio, Nelson Ramos–Irizarry, Carmelo Rivera–Rivera, Teodoro F. Alfonso–Toledo, and Ivan Rosa–Toledo, appeal the district court's denial of their 28 U.S.C. § 2255 petitions. They argue that they were charged with, pled guilty to, and sentenced for a nonexistent offense and that their convictions are therefore unconstitutional or otherwise invalid. The government argues that the petitioners' claims are procedurally barred, their § 2255 petitions were untimely, and their convictions were valid. We affirm the district court's denial of the petitions, but on an alternate ground. We hold that the petitions were untimely under the provisions of § 2255.

## I.

The facts are not in dispute, and we adopt the district court's statement of the facts, supplementing, when necessary, with other facts contained in the record. Between September 1998 and September 1999, the petitioners submitted requests for federal aid for losses and damages to their homes and farms which they claimed to have suffered as a result of Hurricane Georges. The losses and damages claimed were in excess of those actually suffered.

In 2003 and 2004, the petitioners were each charged by information with violating 18 U.S.C. § 1014 which, at the time the acts were committed, provided: "Whoever knowingly makes any false statement or report, ... for the purpose of influencing in any way the action of ... the Secretary of Agriculture acting through the Farmers Home Administration ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." The Farmers Home Administration ("FHA"), however, was abolished in 1994 and at that time was succeeded by the Farm Service Agency ("FSA"). On October 22, 1999, § 1014 was amended to include the phrase "or successor agency" after "Farmers Home Administration." *See* Pub.L. No. 106–78, Title VII § 767, 113 Stat. 1135 (codified as amended at 18 U.S.C. § 1014(2000)).

The petitioners pled guilty to the informations, which charged them with "knowingly and willfully mak[ing] false statements or reports, or overvalu[ing] land, property or security for the purpose of influencing the actions of the Secretary of Agriculture, acting through the Farm Service Agency, an Agency of the United States government and a successor of the Farmers Home Administration...." The petitioners were all sentenced between January 2005 and April 2005. Their sentences ranged from time served to eight hours imprisonment, in addition to terms of supervised release ranging from two years and four months to five years.

Between August 29, 2006, and October 2, 2006, the petitioners each filed a § 2255 petition claiming that until the phrase "or

---

* Of the District of New Hampshire, sitting by designation.

successor agency" was added to § 1014, false statements or reports made to the FSA did not violate § 1014, and therefore their informations failed to charge a crime. They contended that the sentencing court did not have subject matter jurisdiction over them, and that the application of the October 22, 1999 amendment to them violated the Ex Post Facto Clause of the United States Constitution. U.S. Const. art. I, § 9, cl. 3. Eight of the petitions were consolidated for the purpose of deciding their common legal issues. On April 25, 2007, the court denied the § 2255 petitions, finding that § 1014, before it was amended, encompassed the petitioners' conduct, and that charging them under § 1014 did not violate the Ex Post Facto Clause.[1]

## II.

The petitioners argue that the district court erred in denying their petitions based on its conclusion that their conduct violated § 1014, as it was written when they were charged. The government attempts to avoid the substantive issue raised by the petitioners by arguing that their claims are procedurally defaulted and their § 2255 petitions are time-barred. Alternatively, in the event we were to reach the substantive issue, the government argues that the petitioners' conduct violated § 1014. The petitioners counter contending that their petitions are not time barred, and alternatively, that equitable tolling applies. They further argue that, in any event, the merits of their claims must be reviewed because they are actually innocent of the charges, and because they are entitled to coram nobis relief.

### A. *Procedural Default*

The government contends that because the petitioners failed to raise their claims in a direct appeal from their convictions, their claims are procedurally barred from review under § 2255. The petitioners respond that they are challenging the jurisdiction of the sentencing court because the informations failed to charge an offense, and that the jurisdictional challenge may be raised for the first time in a § 2255 petition.

■ The government waived the issue of procedural default by not raising it in response to the § 2255 petitions below. We decline to overlook the government's waiver. *Cf. Oakes v. United States,* 400 F.3d 92, 96 (1st Cir.2005) ("[P]rocedural default is an affirmative defense [which] the government may lose ... by neglecting to raise it in a response to a habeas petition.").

### B. *Timeliness*

Section 2255(a) provides that a prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), § 2255 petitions must be filed within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed,

---

**1.** The § 2255 petition in the ninth case, *Alfonso–Toledo v. United States,* was also denied following the ruling in the consolidated cases, based upon the same reasoning.

if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Under the circumstances of this case, the limitations period for the petitioners to file their § 2255 petitions began to run on "the date on which the judgment of conviction bec[ame] final." 28 U.S.C. § 2255(f)(1). This period expired for all of the petitioners between January and May of 2006, which is one year from the day on which the petitioners' judgments of conviction became final.[2] The earliest § 2255 petition was filed on August 29, 2006, after the one-year period had expired for all the petitioners. Absent an applicable exception to the one-year limitations period, the petitions were untimely.

The petitioners argue that the petitions were timely because they were filed within one year of the date on which they became aware of the "failure to charge an offense" claim. Alternatively, they contend that § 2255's filing deadline does not apply to claims that the sentencing court was without subject matter jurisdiction, and that, in any case, they are entitled to equitable tolling.

### 1. Recognition of the Claim

██ The petitioners state that their § 2255 petitions were filed within one year of October 17, 2005, the date on which they first recognized their claim that the informations against them failed to charge an offense.[3] However, the petitioners do not develop their argument beyond this assertion. They offer no legal support, nor do they cite an applicable event under § 2255(f) which would commence the limitations period later than "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).[4] The petitioners have waived their recognition argument and we decline to address it on the merits. *See Rhode Island Laborers' Dist. Council, Local Union 808 v. Rhode Island,*

**2.** Judgment against Teodoro F. Alfonso–Toledo was originally entered on February 11, 2005. On October 13, 2005, his judgment was amended for "Correction of Sentence for Clerical Mistake." The only change was the addition of a requirement under his supervised release that he enter into a substance abuse treatment program-the length of his supervised release term remained the same. Alfonso–Toledo does not argue on appeal that October 13, 2005, constitutes his date of final judgment. Therefore, we treat February 11, 2005, as the date of final judgment for purposes of this case.

**3.** The petitioners cite to *United States v. Irizarry–Colon,* No. 05–258, 2006 WL 2261366 (D.P.R. Aug. 7, 2006), where the defendant argued in his October 17, 2006, motion to dismiss that his indictment for violations of

§ 1014 failed to charge a criminal offense. The district court rejected the argument.

**4.** To the extent the petitioners attempt to argue that § 2255(f)(4) applies, their argument is unavailing because the discovery of a new legal theory does not constitute a discoverable "fact" for purposes of § 2255(f)(4). *Cf. Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir.2000) (holding that date on which prisoner "understands what legal theories are available" does not constitute "the date on which the factual predicate of the claim or claims presented could have been discovered" regarding timeliness of state prisoner's request for federal habeas relief under § 2244(d)(1)). Further, the petitioners offer no support, nor do they even argue, that this theory could not have been discovered at an earlier date.

145 F.3d 42, 45 (1st Cir.1998) (deeming waived arguments consisting merely of "terse references and hints"); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### 2. *Jurisdiction*

■ The petitioners argue that because the informations failed to charge an offense, the district court was without subject matter jurisdiction to sentence them, and that challenges to jurisdiction are not subject to § 2255's one-year limitations period. The petitioners rely heavily upon Federal Rule of Criminal Procedure 12(b)(3)(B) to support their argument. The government argues that the petitioners disguise a statutory interpretation argument as a jurisdictional challenge in order to avoid § 2255's filing deadline.

Section 2255 states that claims which allege "the court was without jurisdiction to impose such sentence" may be raised in a § 2255 motion seeking to vacate the sentence and that "[a] 1–year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(a), (f). Nothing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period. To the contrary, § 2255(f) explicitly states that the limitations period "shall apply" to all motions made under § 2255.

The petitioners fail to cite a single case which supports their argument. Although they point to Rule 12(b)(3)(B) and cases applying that rule as support for their argument, their reliance is misplaced. Rule 12(b)(3)(B) provides that "at any time while the case is *pending,* the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or state an offense." Fed.R.Crim.P.

12(b)(3)(B) (emphasis added). After a final judgment has been entered, and no direct appeal has been filed, a case is no longer pending and Rule 12(b)(3)(B) cannot be invoked to challenge jurisdiction. *See United States v. Wolff,* 241 F.3d 1055, 1057 (8th Cir.2001) (per curiam) (holding, under prior version of Rule 12(b)(3)(B), that "[a]fter final judgment was entered and [the defendant] did not file a direct appeal, the proceedings were no longer pending[ ]"). We hold that the petitions are not exempt from § 2255's filing deadline.

### 3. *Equitable Tolling*

The petitioners argue that the limitations period for filing their § 2255 petitions should be equitably tolled. They assert that their cases constitute an "extraordinary circumstance" because they were sentenced for violations of a nonexistent offense. Further, they contend that they were misled by the court, the government, and their counsel into believing that the charges were valid.

■ "The doctrine of equitable tolling suspends the running of [a] statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to [his claim]." *Ramirez–Carlo v. United States,* 496 F.3d 41, 48, n. 3 (1st Cir.2007) (quoting *Gonzalez v. United States,* 284 F.3d 281, 291 (1st Cir.2002)) (internal quotation marks omitted). We have yet to decide whether the doctrine of equitable tolling applies to § 2255 petitions. *See Lattimore v. Dubois,* 311 F.3d 46, 55 (1st Cir.2002); *Trenkler v. United States,* 268 F.3d 16, 24 (1st Cir.2001); *cf. Neverson v. Farquharson,* 366 F.3d 32, 40 (1st Cir.2004) (holding that equitable tolling applies to § 2244 petitions from convictions in state courts in rare and extraordinary cases). Other circuits addressing this question have held

that if equitable tolling is applicable, it is available only in "rare and exceptional circumstances." *Trenkler*, 268 F.3d at 24 (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000)) (internal quotation marks omitted). If equitable tolling is available for a § 2255 petition, it "is the exception rather than the rule." *Lattimore*, 311 F.3d at 55 (quoting *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002)) (internal quotation marks and brackets omitted).

▇ We decline to decide the issue because even if equitable tolling were available under § 2255, it is not available to the petitioners under the circumstances presented in this case. To show that it is warranted in their case, the petitioners carry the burden of demonstrating that extraordinary circumstances beyond their control "prevented timely filing," or that they were "materially misled into missing the deadline." *Trenkler*, 268 F.3d at 25 (quoting *Fradella v. Petricca*, 183 F.3d 17, 21 (1st Cir.1999)) (internal quotation marks omitted). Equitable tolling is not applicable if the petitioners "simply 'failed to exercise due diligence in preserving [their] legal rights.'" *Trenkler*, 268 F.3d at 25 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)); *see also Gonzalez*, 284 F.3d at 291 (finding plaintiff's ignorance of facts did not warrant application of equitable tolling, which is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands") (quoting *Salois v. Dime Sav. Bank, FSB*, 128 F.3d 20, 25 (1st Cir.1997)).

The petitioners fail to meet their burden because they misunderstand the equitable tolling standard. Their argument that their convictions themselves constitute an extraordinary circumstance erroneously focuses only on their underlying criminal cases. They fail to raise any extraordinary circumstances arising after their sentencings which caused them to miss § 2255's one-year filing deadline. The claims raised in their § 2255 petitions were always available to the petitioners. They were fully aware of the charges in the informations at the time of their pleas and sentencings, the informations charged them under § 1014, and the statutory language was apparent. Their failure to contemplate their claim that the informations may have charged them with a nonexistent offense is neither an extraordinary circumstance, nor a circumstance which was out of their hands.

We further note that even if their failure to recognize this issue would support equitable tolling, the petitioners' account of the period following their convictions shows that it was possible to file their § 2255 petitions on time. The petitioners contend they became aware of their claim that the informations failed to charge a criminal offense on October 17, 2005, three months before the earliest § 2255 one-year limitations period expired in January 2006 and seven months before the latest limitations period expired in May 2006. The petitioners provide no explanation as to why they were prevented from filing their § 2255 petitions during this time. In light of the foregoing, even if equitable tolling were available under § 2255, we conclude that it is not available to the petitioners in this case.[5]

---

**5.** To the extent the petitioners also argue that equitable tolling is warranted in their cases due to attorney error, their argument is unsupported and meritless. *Trapp v. Spencer*, 479 F.3d 53, 60–61 (1st Cir.2007) (recogniz-

ing that attorney error may justify equitable tolling where error is egregious, or in death penalty cases); *see also Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir.2002) ("Many courts have considered the question whether attor-

## C. *Actual Innocence*

The petitioners argue that their § 2255 petitions should be heard on the merits because their conduct did not constitute a crime under § 1014 and so they are actually innocent of the charges.

■■■■■ An actual innocence claim is "a gateway through which a habeas petitioner [may] have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo,* 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)) (internal quotation marks omitted). To succeed, the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518, 536–37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (quoting *Schlup,* 513 U.S. at 327, 115 S.Ct. 851). Further, "actual innocence" requires the petitioner to show "factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

■■■■■ We have not adopted an actual innocence exception to § 2255's one-year limitations period in this circuit.[6] *Cf. David v. Hall,* 318 F.3d 343, 347 (1st Cir. 2003) ("In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is over-

whelming."). We decline to settle this issue here. Even if such an exception exists, the petitioners have failed to make the requisite showing of actual innocence that would support consideration of their untimely § 2255 petitions on the merits.

The petitioners claim that they are actually innocent because their conduct did not violate § 1014, as it was written when they were charged, since § 1014 did not criminalize filing false reports with the FSA. The petitioners raise a purely legal argument concerning an issue of statutory interpretation. The petitioners do not present any new evidence to show their "factual innocence." They have failed, therefore, to present a colorable claim of actual innocence.

## D. *Coram Nobis*

While this appeal was pending, eight of the petitioners completed their sentences and they argue that they are now entitled to coram nobis relief.[7] This issue was not raised in the district court because the petitioners were in custody for purposes of § 2255 at the time they filed their habeas petitions. In the interest of judicial economy, we will address the coram nobis claim on appeal to avoid the futility of requiring the petitioners to file subsequent writs of error coram nobis in the district court.

■■■■■ "Pursuant to the All Writs Act, federal courts have the authority to grant writs that were traditionally available at common law." *United States v. Sawyer,*

---

ney error constitutes 'rare and exceptional circumstances' and have held that it does not.").

**6.** The petitioners cite several cases in an attempt to argue that actual innocence requires the court to accept their untimely § 2255 petitions because failure to do so would render § 2255 inadequate and ineffective at protecting their rights. These cases are irrelevant here; they address post-conviction relief under 28 U.S.C. § 2241, which permits a fed-

eral prisoner to seek habeas corpus if relief under § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The petitioners have not petitioned, nor do they argue on appeal, for relief under § 2241.

**7.** As of the date of this decision, petitioner Ramon L. Barreto–Ginorio was still serving his sentence, under supervised release.

239 F.3d 31, 37 (1st Cir.2001) (citing 28 U.S.C. § 1651). "A writ of error coram nobis is a common-law writ through which a rendering court, subject to certain conditions, may correct its own judgment on the basis of some patent error affecting the validity or regularity of that judgment." *Trenkler v. United States*, 536 F.3d 85, 90, n. 2 (1st Cir.2008). It is "ordinarily available only to a criminal defendant who is no longer in custody." *Id.* at 98.

To obtain relief under a writ of error coram nobis, the "petitioner must 1) explain her failure to seek relief from judgment earlier, 2) demonstrate continuing collateral consequences from the conviction, and 3) prove that the error is fundamental to the validity of the judgment." *Sawyer*, 239 F.3d at 38. As to the first requirement, it has been recognized that "[a] petitioner may not resort to coram nobis merely because he has failed to meet the AEDPA's gatekeeping requirements." *Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir.2002); *see also Trenkler*, 536 F.3d at 98–99 (holding that petitioner's inability to bring § 2255 petition due to "his own tardiness and AEDPA's gatekeeping provisions" did not entitle him to seek refuge in writ of coram nobis). "To rule otherwise would reduce AEDPA's gatekeeping provisions to a 'meaningless gesture.'" *Trenkler*, 536 F.3d at 99 (quoting *United States v. Barrett*, 178 F.3d 34, 50 (1st Cir.1999)).

We hold that the petitioners fail to meet the first requirement of the coram nobis standard, and we therefore express no opinion as to the second and third requirements. As discussed above, the petitioners failed to demonstrate that their § 2255 petitions could not have been brought within the one-year limitations period. They may not now resort to coram nobis relief to avoid § 2255's deadlines. On a final note, to the extent that the petition-ers rely upon the fact that they are no longer in custody as the sole basis justifying coram nobis relief, their argument is without merit.

### E. *18 U.S.C. § 1014*

Because we hold that § 2255's statute of limitations period is applicable to the petitions filed in this case and that the petitions were filed outside the limitations period, we need not address the petitioners' argument that the district court erred in denying their petitions based on its conclusion that their conduct violated § 1014 before it was amended.

### III.

For the foregoing reasons, the district court's order denying the petitioners' motions for relief pursuant to 28 U.S.C. § 2255 is *affirmed.*

**So Ordered.**